UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNTIED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:03-CR-62-TS |
| | ) | (1:09-CV-147) |
| DENARD MORRIS | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [DE 174], filed on June 1, 2009, by the Defendant, Denard Morris, who is now proceeding *pro se* in this matter. On August 19, the Government filed a Response to Defendant's § 2255 Motion [DE 181], and on September 11, the Defendant filed his Rebuttal to Government's Response to Defendant's § 2255 Motion [DE 182]. For the reasons set forth in this Opinion and Order, the Defendant's Motion is denied.

**BACKGROUND**

On September 4, 2003, a grand jury charged the Defendant and his cousin, Tramayne Peterson, with possessing fifty or more grams of cocaine base with intent to distribute it (Count 1); possessing marijuana with intent to distribute it (Count 2); and carrying a firearm during and in relation to a drug trafficking offense (Count 3).

In November 2004, Peterson entered a Plea Agreement with the Government in which he agreed to plead guilty to Count 1, the crack cocaine offense, and to testify truthfully at the Defendant's trial. In return, the Government agreed to dismiss the marijuana and firearm counts at the time of sentencing, to seek a reduction in his offense level for acceptance of responsibility, and to recommend a period of imprisonment at the low end of the applicable guideline range.

Peterson indicated in the Plea Agreement that he understood that the offense to which he was pleading guilty carried a mandatory minimum term of imprisonment of ten years, and that the firearm would result in two levels being added to his offense level under the Sentencing Guidelines.

The Defendant's three-day trial started on January 18, 2005. According to Peterson, who testified at the Defendant's trial, Peterson got in the Defendant's van on August 4, 2003, because he was looking for a ride to the mall. Officer George Valdez, Jr., of the East Chicago police department, testified that he stopped the van because he recognized the Defendant and knew that there was an active bench warrant for his arrest. The jury heard Peterson testify that when Officer Valdez pulled behind the van, the Defendant stopped the van and handed Peterson a grey plastic bag and told him to run. Peterson took the bag and ran as a second officer gave chase. Peterson claimed not to know what was in the bag when the Defendant handed it to him. As he ran, items inside the bag began to fall out, including a white substance that Peterson testified that he figured was cocaine. As Peterson continued to run, a .45 caliber pistol, baggies of marijuana and cocaine, and an electronic scale fell out behind him. Eventually, Peterson dropped the bag but continued to try to outrun the police. He was apprehended by a third officer. Meanwhile, Officer Valdez arrested the Defendant without incident. No additional drugs, firearms, or other contraband were found on the Defendant or in the van. The Defendant's fingerprint was found on the digital scale. The pistol had been purchased by a woman, LaToya Brown. Testimony offered at trial connected Brown to the Defendant: Peterson testified that the Defendant told him that Brown left the gun in his van earlier that day; and a police officer testified that Brown came into the police station to retrieve a cell phone she had left in the Defendant's van.

During his testimony, Peterson acknowledged the terms of his plea agreement, including the agreement to dismiss two of the charges and the Government's recommendation of a low-end sentence. In his presentation to the jury, the Defendant cited the plea agreement as evidence that Peterson was not credible and was only testifying against the Defendant to get his deal from the Government. The Government maintained in its closing argument to the jury that Peterson was still facing the statutory mandatory minimum of ten years imprisonment, an understanding that was supported by Peterson's testimony.

A jury convicted the Defendant of both drug counts, but acquitted him of the gun charge. On December 14, 2005, the Court sentenced the Defendant to concurrent terms of 262 months of imprisonment. Applying the preponderance of the evidence standard, the Court found that the Defendant possessed a dangerous weapon within the meaning of Guideline § 2D1.1(b)(1) and increased his offense level by two points. This finding, in conjunction with a criminal history category of VI, yielded an advisory Guideline range of 262 to 367 months of imprisonment.

Peterson had been sentenced on March 21. Before Peterson's sentencing, the Government and Peterson filed a joint motion for a downward departure pursuant to Sentencing Guidelines § 5K1.1 and 18 U.S.C. § 3553(e). The Court granted the parties' agreed motion and sentenced Peterson to 70 months of imprisonment instead of the statutory mandatory minimum of 120 months.

On appeal to the Seventh Circuit, the Defendant claimed that the prosecutor committed misconduct by misleading the jury regarding the potential penalty that Peterson was facing, specifically that he was facing a mandatory minimum sentence of ten years. He also argued that the evidence was insufficient to convict him, the Court erroneously allowed testimony about the

3

existence of a bench warrant for his arrest, the prosecutor improperly vouched for Peterson's truthfulness and improperly commented on the Defendant's failure to take the stand, and the Court unlawfully imposed a two-level gun possession enhancement on the basis of acquitted conduct.

On appeal, the Seventh Circuit affirmed the Defendant's conviction on both counts and the sentence on Count 1. *United States v. Morris*, 498 F.3d 634 (7th Cir. 2007). On the issue of prosecutorial misconduct, the court held that it was "improper [for the prosecutor] to give the jury the impression that Peterson's sentence could not go below 10 years during his examination of Peterson, and then later to argue the same thing to the jury, at least when it is obvious that the United States had not firmly rejected the possibility of the § 5K1.1 motion." *Id.* at 639. However, the court held that the prosecutor's conduct did not require a reversal of the Defendant's conviction because his comments did not deprive the Defendant of a fair trial. The court also held that nothing in the Government's treatment of Peterson as a witness undermined the sufficiency of the evidence supporting the verdict because a "great deal of additional evidence linked [the Defendant] to the contents of the bag and to the crime." *Id.* at 641.

The Seventh Circuit remanded the Defendant's case in part for resentencing on Count 2 because the concurrent term of 262 months of imprisonment exceeded the statutory maximum for possession of marijuana under 21 U.S.C. § 841(a)(1). On remand, the Court resentenced the Defendant to concurrent terms of 262 months imprisonment on Count 1 and 120 months of imprisonment on Count 2. An amended judgment reflecting this change was entered on November 19, 2007, and the Defendant appealed. This appeal was dismissed on March 10, 2008, in response to a motion filed by the Defendant. The Defendant had, on February 22, 2008,

4

petitioned the Supreme Court for a writ of certiorari as to the Seventh Circuit's decision affirming the conviction on Counts 1 and 2 and the sentence on Count 1. On May 27, 2008, the Supreme Court denied the Defendant's petition for writ of certiorari. *See Morris v. United States*, 128 S. Ct. 2502 (2008).

**DISCUSSION**

A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[R]elief is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States,* 366 F.3d 593, 594 (7th Cir. 2004) (internal quotation marks and citation omitted). A court may deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

**A.    The Government's Statute of Limitations Claim**

In order for a prisoner to obtain relief under 28 U.S.C. § 2255, he must file his motion within one year from the latest of four specified events: (1) "the date on which the judgment of conviction becomes final"; (2) "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if

5

the movant was prevented from making a motion by such governmental action"; (3) "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review"; or (4) "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f).

The Government argues that the Defendant's Motion is untimely. In doing so, the Government identifies the date that the Seventh Circuit dismissed the Defendant's direct appeal of the amended judgment for Count 2 as the date the conviction became final. This is not the relevant date. Although the habeas statute does not define when a judgment of conviction has become "final," the Supreme Court has held that in the context of postconviction relief, finality attaches when the Supreme Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003) (citing *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994)). The denial of certiorari is effective when it is issued by the Supreme Court. *United States v. Marcello*, 212 F.3d 1005, 1008 (7th Cir. 2000). Accordingly, the Defendant's conviction became final on May 27, 2008, when the Supreme Court denied the Defendant's petition for writ of certiorari. The Defendant's deadline to file a § 2255 motion was May 27, 2009, the one-year anniversary of the date the Supreme Court denied certiorari.

The Defendant's Motion was not docketed with this Court until June 1, 2009. However, "[a] paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing." Rule 3(d) Governing Section 2255 Proceedings. Accordingly, the Defendant's Motion was timely if it was deposited in the prison's

6

mailing system on or before May 27, 2009. "Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage was paid." Rule 3(d) Governing Section 2255 Proceedings. In his Rebuttal to the Government's Response, the Defendant provides a signed and dated affidavit in which he states: "I Denard Morris swear under the penalty of perjury under the laws of the United States of America that the § 2255 Motion was timely filed and documentation[ ] in the supplemental appendix (i.e. certified mail receipt and return receipt requested) are true and correct copies." (Def.'s Rebuttal 7, DE 182.) The affidavit is also signed by a "Case Manager Authorized by the Act of July 7, 1955, as amended, to administer oaths (18 U.S.C. 4004)." The Unites States Postal Service Certified Mail Receipt provided with the declaration shows that the Defendant's Motion was postmarked on May 27, 2009, with postage paid. Accordingly, this Court concludes that the Defendant has established that his Motion was timely filed and that the statute of limitations is not a bar to his claim.

**B.     The Defendant's Claim**

"A § 2255 motion is neither a recapitulation of nor a substitute for a direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995). Therefore, three types of issues are procedurally barred in § 2255 motions: (1) those that were raised on direct appeal, absent a showing of changed circumstances; (2) non-constitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the petitioner demonstrates cause for the procedural default and actual prejudice from the failure to appeal. *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), overruled on other

grounds by *Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994). Ineffective assistance of counsel claims may always be raised in § 2255 cases. *Massaro v. United States,* 538 U.S. 500, 504 (2003).

If the claims in a § 2255 motion fall within this narrow scope, then a court will determine if the allegations warrant an evidentiary hearing. *See* 28 U.S.C. § 2255(b). If the defendant alleges facts that, if true, would entitle him to relief, the Court must grant an evidentiary hearing. *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001). However, these allegations must be in the form of a sworn affidavit that shows that the defendant "had actual proof of the allegations going beyond mere unsupported assertions." *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006). A court is not bound to grant an evidentiary hearing when petitioner's allegations are "vague, conclusory, or palpably incredible rather than detailed and specific." *Bruce*, 256 F.3d at 597.

The Defendant maintains that he is entitled to habeas relief because he was denied due process in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), when the Government "knowingly and wilfully disregarded a specific request, suppression evidence that was material to a tacit agreement and impeachment." (Mot. 4, DE 174.) In *Brady*, the Supreme Court held that the prosecution's withholding "of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.*, 373 U.S. at 87. The *Brady* rule extends to evidence useful to the defense in impeaching government witnesses, even if the evidence itself is not inherently exculpatory. *Giglio*, 405 U.S. at 153–54. This includes evidence of favorable government treatment in exchange for cooperation by a

8

witness. *See, e.g., Braun v. Powell*, 227 F.3d 908, 920 (7th Cir. 2000). Although the Defendant did not raise this constitutional issue on direct appeal, he submits that the factual basis in support of the claim was not known or reasonably available to him at the time of his appeal. He claims that it did not become known to him until March 2009 when he received reports written by an investigator who met with Peterson during plea negotiations. The Defendant claims that the Government and Peterson had an agreement outside of those terms contained in the written plea agreement, in which Peterson understood that the Government would move for a departure from the ten-year statutory mandatory minimum sentence in exchange for his testimony at the Defendant's trial. He maintains that the Government failed to provide this impeachment evidence to the Defendant even though he made a specific request for such evidence.

To succeed on a *Brady* challenge, a defendant must establish: (1) that the prosecution withheld evidence, either willfully or inadvertently; (2) that the evidence was favorable to the defense, either because it was exculpatory or impeaching; and (3) that the denial was prejudicial. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999); *United States v. Roberts*, 534 F.3d 560, 572 (7th Cir. 2008). The Defendant's evidence in support of his claim that the Government had a tacit side deal with Peterson consists of the following: two letters prepared by Dan Baur, a private investigator hired by Peterson's attorney, Robert Gevers; a facsimile letter dated March 14, 2005, from Robert Gevers to AUSA Robert Trgovich; and the Motion for Downward Departure filed in Peterson's case.[1] Baur's letters, dated June 15, 2004, and October 7, 2004, are

---

[1] The Court understands the Defendant to be referring to the existence of the purported agreement, and not to the identified documents themselves, when he argues that the Government failed to provide impeaching material. The letters from the investigator are the only documents that were in existence at the time of the Defendant's trial, and they were not in the possession of the Government. *See United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2002) (stating that the *Brady* rule does not apply to evidence not in the possession of the government that a defendant would have been able to discover

addressed to Robert Gevers. In the June 15 letter, Baur relays to Gevers Peterson's position that

he "can't" serve 87–108 months for the crack cocaine and an additional 60 months for

possessing a firearm, but that he could (i.e., was willing) to serve 60 months. (DE 174-2 at 29.)

Baur then makes several suggestions for Gevers to consider, speculates as to how the various

government agencies and officials involved in the matter may react, and highlights the problems

associated with each suggestion. In the October 7 letter, Baur reports what transpired during an

October 5 meeting with Peterson to discuss the Government's proposed plea agreement. Baur

states that Peterson is "adamantly opposed" to the agreement requiring him to testify against the

Defendant and to serve the mandatory minimum of 120 months of imprisonment. Baur writes

that Peterson will not agree to any plea agreement that requires him to serve more than seven

years of imprisonment, but that Peterson would agree to other conditions, including a 33-month

"downward departure for cooperation subsequent to his 'work' in the Morris case." (DE 174-2 at

35.) Baur indicates in the letter that he informed Peterson that, in his experience, the Government

did not usually offer such a large departure for cooperation and would never agree to it in

writing. Baur then submits a possible solution that involves Peterson pleading to a one-count

Information charging him with possession of crack cocaine, which would allow Peterson to

---

himself through reasonable diligence). The Government would have no reason to know about communications that an investigator acting on behalf of Peterson sent to Peterson's counsel, and thus would have no duty to produce them. *See id.* ("This court has held many times that *Brady* does not require the government to gather information or conduct an investigation on the defendant's behalf."). Likewise, the basis of the Defendant's Motion cannot be that he was deprived a fair trial simply because Peterson could receive a sentence below the statutory mandatory minimum if the Government filed a motion under U.S.S.G. § 5K1.1, because that issue has already been addressed on direct appeal. *Morris*, 498 F.3d at 640 ("Here, the prosecutor's misleading statement [that Peterson had to be sentenced to 10 years] ran the risk of facilitating untruthful testimony from Peterson and it deprived Morris of potential impeachment evidence in violation of *Giglio*."). Accordingly, the Defendant's Motion can only succeed if he first establishes that the Government promised Peterson that he would be sentenced without regard to the mandatory minimum sentence in exchange for his testimony against the Defendant.

avoid a statutory mandatory minimum and would also eliminate any enhancement for the weapon. Baur's conclusion is that Peterson is "very upset" that the Government's plea proposal would require him to testify against a family member and still "forfeit ten (10) years of his life to imprisonment." (DE 174-2 at 37.) Baur states that Peterson is still "very willing" to discuss matters with the Government, but that he will "take his chances" at trial if his sentence is not capped at seven years. (*Id.*)

The Defendant reasons that, because Peterson expressed to Baur that he was not willing to serve a ten-year sentence if he testified against the Defendant but Peterson did in fact testify against the Defendant, the Government must have gained his cooperation by promising Peterson that it would move for a departure. The Defendant, however, does not have actual proof of the existence of any such agreement. The submissions do not purport to describe any promise originating with, or acquiesced in by, the U.S. Attorney's office, except for the terms of the Plea Agreement that Peterson actually entered, which did not contain any language regarding a departure or a sentence below that mandatory minimum. A review of the letters reveals that none of the scenarios presented by Baur to avoid a mandatory term of imprisonment actually came to fruition. Rather, Peterson signed the same Plea Agreement that he initially rejected, and it is speculation to suggest that Peterson changed his mind because he arrived at a tacit agreement with the Government that he would be sentenced to less than ten years. In his affidavit, the Defendant states that Peterson informed him by telephone that Gevers told Peterson that he could get him seventy months if he signed a plea agreement and testified, and that this induced Peterson to sign the plea. Even if the Court ignores the two layers of inadmissible hearsay, the statement about Peterson's counsel's reassurance does not suggest that the Government

11

promised Peterson this benefit.[2] It is, at most, Peterson's belief about what his attorney would try to do. The Court also notes that in June 2004 Peterson told Baur that he could serve five years, but by October of the same year, he said he would not agree to more than seven years. This demonstrates Peterson's willingness to adjust his position, which is not uncommon where a criminal defendant has had time to consider his options and the reality of his situation. When Peterson signed the Plea Agreement on November 3, it contained no agreement for a departure, and Peterson acknowledged that conviction of the offense required imprisonment of not less than ten years. This was the same understanding he testified to at trial.[3] That the Government later moved for a departure, after the trial of his co-defendant, does not establish that the Government promised Peterson in advance of his testimony that it would do so. Likewise, the fact that Peterson's attorney requested the departure on his client's behalf does not suggest a prior

---

[2] Indeed, it is unlikely that Peterson's attorney would have advised him that he could expect to be sentenced to 60 months instead of 120 months without memorializing the expectation in a written plea agreement. Although "the government must fulfill any promise that it expressly or impliedly makes in exchange for a defendant's guilty plea," plea agreements are contracts, and their content and meaning are determined according to ordinary contract principles. *United States v. Ingram*, 979 F.2d 1179, 1184 (7th Cir. 1992). "A defendant's rights under a plea agreement are limited by what the parties in fact agreed to." *United States v. Lezine*, 166 F.3d 895, 901 (7th Cir. 1999). Even Peterson, at least as reported by Baur, appeared to understand this when he insisted in early October that any plea agreement he entered reflect the sentencing concessions he believed would sufficiently reward his cooperation. (DE 174-2 at 35.)

[3] The Defendant does not explicitly state that Peterson committed perjury when he testified that his understanding was that he was facing a ten-year mandatory minimum. The Court notes that even if Peterson believed an agreement existed outside the plea agreement, the most he could have testified to was that he believed the Government would file a motion to depart—not that he was guaranteed a sentence below ten years. While this would still constitute impeachment material, its value, as discussed later in this Opinion and Order, would be only incremental.

Further, even if the Defendant did allege that Peterson perjured himself, "the introduction of perjured testimony, without more, does not rise to the level of a constitutional violation warranting federal habeas relief." *Tayburn v. Scott*, 251 F.3d 1125, 1130 (7th Cir. 2001). The alleged perjured testimony "'must bear a direct relationship to the defendant's guilt or innocence.'" *Id.* (quoting *United States v. Magana*, 118 F.3d 1173, 1191 (7th Cir. 1997)).

agreement. The Defendant's submissions do not suggest that the Government agreed in advance of Peterson's testimony that it would file a motion for a downward departure, and the Defendant is not entitled to a hearing based on his speculative interpretation of the documents and the sequence of events.

The Defendant's Motion also fails because even if the Defendant could establish at an evidentiary hearing that matters outside the record reveal that the parties had an unwritten understanding regarding Peterson's sentence, the Defendant cannot establish that evidence of such an agreement was material to an issue at trial. Withheld evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995). A "reasonable probability" of a different result is shown when "the government's evidentiary suppression 'undermines confidence in the outcome of the trial.' " *Id.* at 434 (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)). A defendant may demonstrate a *Brady* violation by "showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435. If the prosecutor knowingly relied on false testimony, the conviction must be set aside "if there is any reasonably likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976). The *Agurs* standard sets a lower threshold for determining materiality than the *Bagley* standard and is considered more favorable to the defendant. *See Braun v. Powell*, 227 F.3d 908, 920 (7th Cir. 2000).

The Defendant argues that his "guilt beyond a reasonable doubt turned on whether the jury was convinced by Peterson's testimony." (174-2 at 18.) This Court finds that the Seventh

13

Circuit's reasoning on direct appeal (with regard to the misleading impression created by the Government that Peterson could not be sentenced to less than ten years) applies with equal force to the Defendant's claim before this Court about a tacit agreement that his sentence would be less than ten years. The Seventh Circuit stated:

> The picture the jury had before it of Peterson's plea agreement made it aware that he was receiving a substantial benefit for his testimony and, more importantly, that he had strong incentives to please the government. Peterson revealed to the jury that in exchange for his testimony, the government would drop two of the charges (Counts II and III) and would ask the court to give him a sentence at the bottom end of the guideline range. In addition, the court stressed that the jury would have to evaluate Peterson's credibility carefully. Although the jury might have recognized the potential for an additional reduction in Peterson's sentence as a marginally greater incentive for Peterson to tailor his testimony in favor of the government, the information that the jury had before it was not different enough to lead us to believe that there was a "reasonable likelihood" that the result would have changed.

*Morris*, 498 F.3d at 640 (quoting *Giglio*, 405 U.S. at 154).[4] Likewise, the difference between the incentives that were disclosed to the jury and those that the Defendant now maintains existed by tacit agreement is not enough to create a reasonable likelihood that the purported false testimony could have affected the verdict of the jury or put the whole case in such a different light that confidence in the verdict is undermined. *Cf. United States v. Knight*, 342 F.3d 697, 706 (7th Cir. 2003) (holding that because effective cross-examination of witnesses already covered their motivation to trade their testimony in exchange for a promise of lenient treatment by the government, it was unlikely that the suppression of any additional evidence, which was cumulative on the issue of motivation and bias, would have made a difference to the jury in their

---

[4] The Seventh Circuit applied the more defense friendly standard from *Agurs* to hold that the prosecutor's comments were not material and did not deprive the Defendant of a fair trial. *Morris*, 498 F.3d at 640.

14

appraisal of the evidence).

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules Governing Section 2255 Proceedings. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983). Where, as here, the district court has rejected the constitutional claim on the merits, "the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. The defendant is not required to show that he will ultimately succeed on appeal. *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003) (stating that the question is the "debatability of the underlying constitutional claim, not the resolution of that debate"). The constitutional issue presented by the Defendant's Motion is whether the Government failed to disclose material impeachment evidence concerning his co-defendant's motive to testify against the Defendant. This Court has concluded that the Defendant's submissions do not show the Government and Peterson had any agreement that was not memorialized in the Plea Agreement and that, even if

such an agreement existed, withholding it was not prejudicial to the Defendant. The Court finds that reasonable jurists could debate whether the Defendant presented sufficient evidence of an agreement to warrant an evidentiary hearing. The debatability of the materiality finding appears to be foreclosed by the Seventh Circuit's resolution of the Defendant's direct appeal. *Morris*, 498 F.3d at 640. However, because the issue presented in the habeas Motion differs slightly from that considered by the Seventh Circuit, the Court finds that reasonable jurists could debate the Court's second finding as well. The Court will issue a certificate of appealability on the Defendant's claim that his constitutional rights were violated when the Government allegedly withheld evidence favorable to the Defendant.

## CONCLUSION

For the reasons stated herein, the Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [DE 174] is DENIED, and the Defendant is GRANTED a certificate of appealability.

SO ORDERED on May 25, 2010.

                                           s/ Theresa L. Springmann
                                           THERESA L. SPRINGMANN
                                           UNITED STATES DISTRICT COURT